IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION NO. 09-0319 |
| v. : | |
| : | CIVIL ACTION NO. 10-6280 |
| TIMOTHY W. STROBL : | |

### MEMORANDUM

**SURRICK, J.**                                                                                                           **MARCH 10, 2017**

Presently before the Court is Petitioner Timothy W. Strobl's *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 39.) For the following reasons, the Motion will be denied.

**I.    BACKGROUND**

The investigation into Timothy W. Strobl's ("Petitioner") criminal conduct began when German officials reported to United States law enforcement officers that a computer at Petitioner's address had offered up a file depicting pornographic images of children. (Aug. 14, 2009 Hr'g Tr. 17, ECF No. 27.) The United States Bureau of Immigration and Customs Enforcement ("ICE") conducted an investigation, which included a forensic analysis of Petitioner's computer and other electronic devices. (*Id*.) The analysis produced evidence confirming that Petitioner had downloaded files depicting child pornography. (*Id*.) ICE officials found fourteen photographs that depicted pornographic images of children. (*Id*. at 17-18.) The photographs were linked to a camera that was seized from Petitioner. (*Id.* at 18.) The pictures included an image of a victim who was five-years-old at the time it was captured, and another that depicted a victim who wore a diaper. (*Id*.) These photographs showed Petitioner pushing the children's undergarments to the side to expose their genitals. (*Id*.) Both victims were asleep when the photographs were taken. (Nov. 16, 2009 Hr'g Tr. 5, ECF No. 34.)

On May 7, 2009, a grand jury in the Eastern District of Pennsylvania issued a one-count indictment charging Petitioner with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4).  (ECF No. 12.)  On June 11, 2009, the grand jury returned a Superseding Indictment, which added fourteen counts of producing child pornography in violation of 18 U.S.C. §§ 2251(a) and 2251(e).  (ECF No. 19.)  The Superseding Indictment provided inter alia that Petitioner's computers "contained more than 600 visual depictions that had been shipped and transported in interstate and foreign commerce."  Petitioner entered a plea of guilty to two counts of production of child pornography on August 14, 2009.  (Aug. 2009 Hr'g Tr. 21.)

Petitioner faced a mandatory minimum fifteen-year sentence on each count.  (Nov. 2009 Hr'g Tr. 27.)  Petitioner was 29-years old at the time of sentencing.  At the sentencing hearing on November 16, 2009, the effective sentencing guideline range was determined to be 262-327 months.  This included an enhancement pursuant to § 3A1.1(b) of the United States Sentencing Guidelines ("U.S.S.G."), commonly called the vulnerable victim enhancement.  Petitioner was sentenced to a total period of incarceration of 240 months.  (*Id.* at 29.)  The sentence consisted of concurrent terms of incarceration of 240-months on Count Two and Count Fifteen of the Superseding Indictment.

On November 9, 2010, Petitioner filed this *pro se* Motion pursuant to 28 U.S.C. § 2255.  (Petr's Mot., ECF No. 39.)[1]  On December 21, 2010, the Government filed a response.  (Mot. to Dismiss, ECF No. 41.)

---

[1] "Under the prison mailbox rule, [a] prisoner's filings are deemed filed upon mailing." *United States v. Delgado*, 363 F. App'x 853, 854 n.1 (3d Cir. 2010).  Thus, we deem Petitioner's Motion as having been filed on the date he placed it in the prison mailing system.  Section 2255 motions are subject to a one-year statute of limitations.  Under subsection (f), that one-year clock starts to run from the latest of the following dates: "(1) the date on which the judgment of conviction becomes final . . . ."  28 U.S.C. § 2255(f).  Petitioner's Motion is timely.

## II.  LEGAL STANDARD

Under § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  Relief under this provision is generally available "to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."  *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).

The statute provides, as a remedy for a sentence imposed in violation of the law, that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255.

The Court may in its discretion hold an evidentiary hearing on a § 2255 petition.  *See Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989).  However, such a hearing need not be held if the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).

## III.  DISCUSSION

Petitioner claims that the vulnerable victim enhancement was incorrectly applied to the calculation of his sentencing guideline range.  The Government responds that Petitioner waived his right to attack his sentence on these grounds when he agreed to the underlying plea arrangement.  Petitioner's guilty plea Agreement specifically provides that Petitioner is waiving his right to appeal or collaterally attack his conviction or sentence.  Petitioner contests the

applicability of the plea agreement's waiver provision, arguing that he would not have entered such an agreement absent his counsel's ineffective assistance. After a thorough review of the record, we are satisfied that the plea agreement's waiver provision is enforceable. We are also satisfied that Petitioner's substantive claim lacks merit.

### A.     Preclusive Effect of the Plea Agreement

Waivers of the right to collateral review are enforceable "provided that they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice." *United States v. Mabry*, 536 F.3d 231, 237 (3d Cir. 2008); *see also United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001). Petitioner argues that his agreement to waive the right to attack his sentence is unenforceable because he did not enter the underlying plea agreement knowingly and voluntarily. Specifically, he argues that "the full impact of the guilty plea was not explained," and that he "was uncomfortable with the plea." (Petr's Mot. 7.) In addition, Petitioner alleges that trial counsel told him that his only option was to plead guilty, and that a refusal to do so would result in the imposition of a life sentence. (*Id.*)

The role of the court in determining whether a defendant has knowingly and voluntary waived his right of appeal or to collaterally attack his sentence is critical. *Khattak*, 273 F.3d at 562. Before accepting a guilty plea, the court must address the defendant personally and determine that he understands the terms of any plea agreement provision waiving such rights. *See* Fed. R. Crim. Proc. 11. Before accepting Petitioner's guilty plea, this Court conducted an extensive guilty plea colloquy with Petitioner, who was under oath in open court. One need only read the transcript of the guilty plea hearing to know that Petitioner's guilty plea was knowing, voluntary, and intelligently entered. Among the many questions asked of Petitioner were the following:

4

| | |
|---|---|
| Court: | Now, you are represented by Mr. Waldron in this matter? |
| Petitioner: | Yes, sir . . . . |
| Court: | Have you had a chance to discuss this plea with him in detail? |
| Petitioner: | Yes, Your Honor . . . . |
| Court: | Are you satisfied with his representation? |
| Petitioner: | Yes, Your Honor . . . . |
| Court: | I'm going to ask you a lot of questions over the next 10 or 15 minutes and the reason I'm asking you these questions is so that I can establish that you are entering this plea voluntarily of your own free will and that you are doing it intelligently; you know exactly what you're doing, do you understand that? |
| Petitioner: | Yes, Your Honor . . . . |
| Court: | If the Government had to prove those charges against you, Mr. Strobl, they would have to prove that you used or induced or enticed or persuaded or coerced a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct . . . ? |
| Petitioner: | Yes, Your Honor . . . . |
| Court: | Do you understand that each one of these counts is punishable by up to 30 years in jail, do you understand that? |
| Petitioner: | Yes, Your Honor . . . . |
| Court: | Do you have any questions about the punishment that can be imposed for those crimes? |
| Petitioner: | No, Your Honor . . . . |
| Court: | Anybody pressure you to make you sign this [plea agreement]? |
| Petitioner: | No, Your Honor . . . . |
| Court: | Anybody promise you anything in return for signing this plea agreement? |
| Petitioner: | No, Your Honor . . . . |
| Court: | You understand that if you have any questions, now is the time to ask them, not later? |
| Petitioner: | Yes, Your Honor . . . . |
| Court: | There are some provisions in here that I want to talk about . . . . That is a waiver of appeal rights. Did you read that paragraph—waiver of appeal rights? |
| Petitioner: | Yes, Your Honor. |
| Court: | That's a significant provision in this plea agreement, do you understand that? |
| Petitioner: | Yes, Your Honor. |
| Court: | . . . I want you to understand that you are severely limiting your appeals by entering into this plea agreement with the Government and offering this plea in Court under those circumstances . . . . |
| Court: | Mr. Strobl, do you understand what that waiver of appeal rights provision is about? |
| Petitioner: | Yes, Your Honor. |

5

(Aug. 2009 Hr'g Tr. 5-12.)  The Court also advised Petitioner of his constitutional right to go to trial and of the entitlements associated with that right.  (*Id.* at 12.)  Specifically, the Court told Petitioner that he could file pretrial motions—including motions to suppress any evidence that was unlawfully obtained; that he had a right to participate in the jury selection process; that he was entitled to a presumption of innocence; and that he could not be found guilty if any juror reasonably doubted his guilt; that he was entitled to appellate counsel.  (*Id.* at 12-14.)  Petitioner decided to admit guilt pursuant to the plea agreement after the Court had fully advised him of all of his constitutional rights.  (*Id*. at 15.)  Finally, the Court discussed with Petitioner the sentencing guidelines and the advisory nature of those guidelines.  (*Id*. at 16.)

The plea agreement that Petitioner signed specifically provided the following with regard to his appeal rights:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.

(Mot. to Dismiss 3.)

We are satisfied that Petitioner's decision to plead guilty to Counts Two and Fifteen of the Superseding Indictment was both knowing and voluntary.  The Court thoroughly discussed the terms of the plea agreement and its implications with Petitioner in plain English to ensure that Petitioner understood all of the rights that he was waiving.  Petitioner repeatedly confirmed that he understood the plea agreement and was aware that he had a right to a trial where the government would carry the burden of proof.  In addition, Petitioner specifically indicated that he understood the limitations the plea agreement placed on his right to appeal or collaterally attack his sentence.  Review of the plea agreement, which Petitioner acknowledged that he read,

discussed with counsel and understood, coupled with the thorough colloquy that was conducted here, clearly demonstrates that Petitioner knowingly and voluntarily waived his right to file the instant Motion. Therefore, the collateral attack waiver is enforceable unless it would result in a miscarriage of justice.

The Third Circuit has recognized that enforcing a knowing and voluntary waiver would work a miscarriage of justice in only a few limited circumstances, such as where "constitutionally deficient lawyering prevented [the defendant] from understanding his plea." *United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007). Petitioner contends that he entered into the plea agreement only because he misunderstood its terms as a result of his counsel's ineffectiveness.

### B. Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, Petitioner must satisfy the two-part test outlined in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, he must show that his attorney's representation was deficient because it was not "within the range of competence demanded of attorneys in criminal cases." *Id.* Second, he must show "prejudice." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *Strickland*, 466 U.S. at 687. The bar for ineffectiveness is high and Petitioner must show that counsel provided information "that proves to be grossly erroneous and . . . that he would not have plead[ed] guilty in the absence of the erroneous information." *Meyers v. Gillis*, 142 F.3d 664, 666 (3d Cir. 1998). Petitioner's ineffective assistance claims do not satisfy *Strickland*'s mandates.

Petitioner first contends that the plea agreement's waiver provision is unenforceable because counsel did not completely explain the agreement to him. This claim is without merit. As discussed above, the Court reviewed the plea agreement with Petitioner in detail. Petitioner

7

confirmed that he had read the plea agreement, that he had discussed it with counsel, that he understood each and every paragraph of the agreement, that he signed the plea agreement of his own free will, that no pressure had been put on him to sign the agreement, and that no promises had been made to him in return for signing the agreement.

Petitioner next alleges that counsel indicated that Petitioner would receive a life sentence if he did not plead guilty. The Superseding Indictment charged Petitioner with sixteen counts of possession or production of pornography. During the plea colloquy, the Court explained to Petitioner that the two counts that he was pleading to were punishable by up to 30 years in jail. (Aug. 2009 Hr'g Tr. 7.) In addition, the Court advised Petitioner that he had a right to a jury trial where he would be presumed innocent and where the Government would have the burden of proving him guilty beyond a reasonable doubt. (*Id.* at 13-14.) In fact, the Court explained Petitioner's trial rights in great detail. Any claim that Petitioner believed his only alternative to the plea deal was life imprisonment is ridiculous.

Plaintiff also claims that counsel was ineffective because he did not submit mitigating factors either to pre-trial services or to the Court. This contention is not supported by the record. At sentencing, counsel argued that Petitioner deserved sentencing mercy because he was diagnosed with major depression disorder, never had direct sexual contact with the victims, never disseminated the photographs at issue, and because he did not have a prior criminal history. (Nov. 2009 Hr'g Tr. 7-11.) Moreover, Counsel provided the Court with a number of letters from people in the community who supported Petitioner and spoke very highly of him. We are satisfied that counsel's representation in this regard was not deficient.

Finally, Plaintiff asserts that counsel was ineffective because he failed to file any appeals regarding the application of the vulnerable victim enhancement. The Third Circuit has observed

that "*where there is a total appellate and collateral waiver*, counsel's duty to protect his or her client's interest militates against filing an appeal which could cost the client the benefit of the plea bargain against his or her best interest." *Mabry*, 536 F.3d 231, 240-41 (citation and internal quotations omitted). "Thus, there is no reason to presume prejudice amounting to a miscarriage of justice in such a situation where the attorney's filing of an appeal would constitute a violation of the plea agreement, relieving the government of its obligations as well." *Id*. at 240-41.

Petitioner faced sixteen counts of possession and production of child pornography, each of which is punishable by significant terms of imprisonment. He has not submitted any facts demonstrating that, under the circumstances here, counsel's suggestion that he enter a plea agreement amounted to deficient performance. The evidence against Petitioner was overwhelming. The sentence that Petitioner would have received after being found guilty by a jury could have been significantly more severe than the sentence he received. Petitioner's plea agreement with the Government did not constitute deficient performance by counsel.

      **C.**      **Application of the Vulnerable Victim Sentencing Enhancement**

Even if Petitioner could collaterally attack his sentence, he would be afforded no relief. Petitioner argues that the vulnerable victim enhancement was erroneously applied to his sentence. We disagree.

Section 3A1.1(b)(1) of the U.S.S.G. provides for a two-level enhancement of a defendant's offense level "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." In the Third Circuit, the enhancement is appropriately applied where:

> (1) the victim was particularly susceptible or vulnerable to the criminal conduct; (2) the defendant knew or should have known of this susceptibility or vulnerability; and (3) this vulnerability or susceptibility facilitated the defendant's

crime in some manner; that is, there was a nexus between the victim's vulnerability and the crime's ultimate success.

*United States v. Zats*, 298 F.3d 182, 186 (3d Cir. 2002) (citation and internal quotation marks omitted).

That the victims depicted in the confiscated photographs were asleep when the pictures were taken is uncontested. During the sentencing hearing, Petitioner's counsel argued that the victims' sleeping state did not render them any more vulnerable than they otherwise were. (Nov. 2009 Hr'g Tr. 4-5.) Counsel said that the fact that the victims were asleep during the commission of the crime did not facilitate its success. (*Id*.) In counsel's view, the photographs could have been taken just as easily even if the victims were awake because they were too young to prevent the unlawful act. (*Id*.) Counsel argued that application of the vulnerable victim sentencing enhancement was inappropriate. (*Id*.) In addition, he argued that the vulnerability enhancement had already been applied because of the victims' young age. (*Id*. at 4.)[2] Petitioner reasserts these contentions.[3]

We are satisfied that the victims' sleeping state made them uniquely vulnerable during the commission of the underlying offense. Applying the principles outlined in *Zats*, we first note that "the victim[s were] particularly susceptible or vulnerable to the criminal conduct." 298 F.3d at 186. That the victims were asleep when Petitioner photographed them made them wholly unable to resist Petitioner's conduct. They were unable to cry out for help and could not walk away from the sexual abuse. Second, Petitioner was undoubtedly aware that the victims could

---

[2] Pursuant to U.S.S.G. § 2G2.1(b)(1)(A), Petitioner's guideline calculation included an enhancement with respect to each count because the offenses involved minors who had not attained the age of twelve.

[3] Because Petitioner filed his Motion *pro se*, we construe it liberally. *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999).

not express any objection to his conduct precisely because they were asleep.  We doubt that Petitioner could have committed the sexually abusive conduct as easily if the victims had been awake during his attempt.  It is clear that the victims' sleeping state facilitated the crime's success.  This determination is consistent with case law.  *See United States v. Coriz*, No. 12-2681, 2014 WL 4347179, at *2 (D.N.M. Aug. 29, 2014) (collecting cases).  Furthermore, the fact that Petitioner's conduct was not discovered until law enforcement officers examined his electronic devices in connection with an unrelated criminal investigation underscores the appropriateness of our conclusion here.

       This record conclusively shows that Petitioner is entitled to no relief.  No hearing is necessary to rule on this matter.  *See* 28 U.S.C. § 2255(b).  Since Petitioner's Motion is meritless, the Motion will be denied.

       **D.**    **Certificate of Appealability**

       To qualify for a certificate of appealability, a habeas litigant must demonstrate, among other things, that reasonable jurists would debate whether the district court was correct in its procedural ruling.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Since no reasonable jurist would disagree with our assessment of Petitioner's claims, no certificate of appealability can issue.  *See id.*

## IV.     CONCLUSION

For the foregoing reasons, Petitioner Timothy Strobl's Motion to Vacate, Set Aside, or Correct Sentence will be denied and no certificate of appealability will issue.

An appropriate Order follows.

**BY THE COURT:**

**R. BARCLAY SURRICK, J.**